IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

By staylor at 2:06 pm, May 17, 2017

| | |
|---|---|
| ABDUL MALIK CHESTNUT | |
| Plaintiff, | CIVIL ACTION NO.: 6:16-cv-136 |
| v. | |
| JACKSON DIAGNOSTIC & CLASSIFICATION PRISON; JENKINS CORRECTIONAL FACILITY; WARDEN ROBERT ADAMS, JR.; WARDEN ERIC SELLERS; GEORGIA DEPARTMENT OF CORRECTIONS; CORRECTIONS CORPORATION OF AMERICA; SCOTT WILKES; and HOMER BRYSON,[1] | |
| Defendants. | |

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff filed a Complaint in the Northern District of Georgia pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement at the Georgia Diagnostic & Classification Prison in Jackson, Georgia, and at Jenkins Correctional Facility in Millen, Georgia. (Doc. 1.) The Northern District transferred this cause of action to this Court. (Doc. 3.) The Clerk of Court notified Plaintiff that he failed to submit the requisite filing fee or move to proceed *in forma pauperis*. (Doc. 7.) Plaintiff then filed a Motion for Leave to Proceed *in Forma Pauperis*. (Doc. 10.) The Court deferred ruling on Plaintiff's Motion and directed him to provide the correct *in forma pauperis* affidavit and an Amended Complaint. (Doc. 12.) Although Plaintiff filed an Amended Complaint and a Motion to Proceed *in Forma Pauperis*, (docs. 13, 14), Plaintiff also filed a Motion for Extension of Time to file "a more proficient, in depth and acceptable" Amended Complaint, (doc. 15, p. 1). The Court granted Plaintiff's

---

[1] It appears that Defendant Robert Adams, Jr., was misidentified as "Robert Abrams, Jr.", upon the docket of this case.

Motion for Extension of Time by Order dated March 24, 2017, and provided Plaintiff an additional twenty-eight (28) days to file an Amended Complaint. (Doc. 16.) The Court also provided Plaintiff with instructions regarding the filing of his second Amended Complaint and forewarned Plaintiff that his failure to abide by those instructions could result in the dismissal of his Complaint for failure to follow this Court's Order. (Id. at p. 2 n.2.) Plaintiff did not comply with this Court's Order.

For the reasons which follow, the Court **DENIES** Plaintiff's Motions for Leave to Proceed *in Forma Pauperis*. (Docs. 10, 14.) For these same reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint for failure to state a claim and **DIRECT** the Clerk of Court to **CLOSE** this case. Additionally, I **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND

In his Complaint, Plaintiff alleges he complained about having severe chest pains and shortness of breath on January 14, 2016, while he was housed at the Georgia Diagnostic Prison, and was given two Tums, returned to his cell, and cleared by medical staff. (Doc. 1, p. 3.) Plaintiff was transferred to Jenkins Correctional Facility the following day and reported the previous night's events to medical staff. Plaintiff states he was told he would see a doctor but still had not ten (10) days later. Plaintiff claims he submitted sick call requests due to breathing troubles and chest pains on several occasions and was not treated in a proper manner. Plaintiff was scheduled to see a doctor on February 22, 2016, but he was later refused this visit after an audit was conducted. (Id. at p. 4.) Plaintiff asserts he had a severe coughing attack on March 19, 2016, and was given Maalox and Robitussin before being sent back to his dorm, where he was exposed to second-hand smoke. Two days later, Plaintiff experienced severe chest pains and

shortness of breath, and he was taken to the local hospital. An x-ray and examination revealed Plaintiff had a "huge tumor" in his chest, fluid in his left lung, and his heart was pushed over four inches into his right chest cavity. (Id. at p. 4.) Plaintiff then was taken to another hospital, where he was diagnosed with "severe smoke side effects, consistent with that of a chronic smoker[,] yet he is not a smoker." (Id. at p. 6.) Plaintiff was diagnosed with having stage 2 cancer. Plaintiff was transferred to Augusta State Medical Prison for follow-up care.

Plaintiff contends he was rushed back to the hospital a few days after his transfer to Augusta State Medical Prison after he suffered a stroke. About two weeks later, Plaintiff was once again taken back to the hospital when he began vomiting blood, at which time it was discovered his cancer had advanced to stage 3 and had spread to his diaphragm. Plaintiff received two blood transfusions and chemotherapy treatments before being sent back to Augusta State Medical Prison on April 21, 2016. (Id.) Plaintiff maintains he was not provided with sufficient food or his prescribed medications upon his return. Plaintiff was given a medical reprieve on June 21, 2016. (Id. at p. 7.)

Upon the transfer of Plaintiff's Complaint to this District, the Clerk of Court mailed a deficiency notice to advise Plaintiff that he failed to submit the requisite filing fee or an application to proceed *in forma pauperis* in this Court. (Doc. 7.) The Clerk mailed that notice to Plaintiff at Augusta State Medical Prison, presumably because Plaintiff maintained that was where he was incarcerated at the time he filed his Complaint on August 29, 2016. However, that notice was returned as undeliverable, with the notation "Medical reprieve" on the envelope, on October 13, 2016. (Doc. 8.) The Clerk of Court then sent the Notice to Plaintiff to another address he provided on page 3 of his Complaint, (dkt. entry date Nov. 1, 2016), which appeared to be an address not connected to any penal institution.

Plaintiff then filed a Motion for Leave to Proceed *in Forma Pauperis*. (Doc. 10.) The Court deferred ruling on Plaintiff's Motion and directed him to provide the correct *in forma pauperis* affidavit and an Amended Complaint. (Doc. 12.) Plaintiff filed an Amended Complaint. (Doc. 13.) In his Amended Complaint, Plaintiff added no new factual allegations. Instead, he wished to substitute certain already-named Defendants and to name additional Defendants. Specifically, Plaintiff now names the Georgia Department of Corrections ("GDOC"), as the owner and operator of Jackson Diagnostic & Classification Prison, as a Defendant. Plaintiff contends GDOC knew or should have known the condition of the Prison and failed to make necessary repairs to the Prison or quarantine Plaintiff from the toxic fumes. (Id. at p. 4.) Plaintiff also states Eric Sellers is the Warden at Jackson Diagnostic and, as such, he oversees the daily operations of the Prison to ensure the proper treatment of inmates. (Id.) Additionally, Plaintiff names Corrections Corporation of America ("CCA"), which is a private company that contracts with state and local municipalities, as well as federal agencies, to manage and operate prisons across the country. According to Plaintiff, CCA refused to provide him with medical assistance, despite his multiple requests. (Id. at p. 7.) Plaintiff contends Robert Adams, Jr., the Warden at Jenkins Correctional Facility, failed to have proper ventilation equipment installed at Jenkins Correctional and failed to respond to Plaintiff's grievance. (Id.) Further, Plaintiff maintains that Scott Wilkins, another Warden at Jenkins Correctional, did not implement a policy whereby Plaintiff could have necessary medical care and food while he was housed at Jenkins, and he was negligent in handling Plaintiff's needs. (Id. at pp. 8–9.) Finally, Plaintiff named Homer Bryson, the former GDOC Commissioner, as a Defendant, and claims Homer Bryson was responsible for the daily operations of the correctional facilities under the control of the GDOC. (Id. at p. 9.)

Although Plaintiff filed an Amended Complaint and a Motion to Proceed *in Forma Pauperis*, (docs. 13, 14), Plaintiff also filed a Motion for Extension of Time to file "a more proficient, in depth and acceptable" Amended Complaint, (doc. 15, p. 1). The Court granted Plaintiff's Motion for Extension of Time by Order dated March 24, 2017, and provided Plaintiff an additional twenty-eight (28) days to file an Amended Complaint. (Doc. 16.) The Court also provided Plaintiff with instructions regarding the filing of another Amended Complaint and forewarned Plaintiff that his failure to abide by those instructions could result in the dismissal of his Complaint for failure to follow this Court's Order. (Id. at p. 2 n.2.) Plaintiff did not comply with this Court's Order. In addition, this Order was returned to the Court as "not deliverable as addressed", even though the Clerk of Court mailed this Order to Plaintiff at his listed address. (Doc. 17.) Nevertheless, the Court shall review the relative merits of Plaintiff's allegations.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleading contained in the Federal Rules of Civil Procedure when reviewing a Complaint on an application to proceed *in forma pauperis*. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v.

6

Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION[2]

### I. Dismissal for Failure to State a Claim

As noted above, Plaintiff names as Defendants in his Amended Complaint the GDOC, CCA, Warden Adams, Warden Sellers, Warden Wilkes, and former Commissioner Bryson. However, Plaintiff's attempts to name these entities as Defendants in his Section 1983 action fail, and the Court should **DISMISS** Plaintiff's Complaint for failing to state a claim.

#### A. Claims Against GDOC and CCA

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. While local governments qualify as "persons" under Section 1983, state agencies, penal institutions, and private corporations which contract with states to operate penal institutions are generally not

---

[2] The Court's Order dated March 24, 2017, was returned as undeliverable. Thus, the Court could also dismiss Plaintiff's Complaint based on his failure to advise the Court of any update in address. Order and R. & R., Evans v. DeLoach, et al., 2:16-cv-27 (S.D. Ga. July 26, 2016), ECF No. 15. Additionally, the Court could dismiss Plaintiff's Complaint based on his failure to follow this Court's Orders.

7

considered legal entities subject to suit. See Grech v. Clayton Cty., 335 F.3d 1326, 1343 (11th Cir. 2003).

In this case, Plaintiff cannot sustain his claims against the GDOC and CCA, as these are not entities subject to suit under Section 1983. Thus, the Court should **DISMISS** Plaintiff's claims against the GDOC and CCA

### B.     Claims Based on *Respondeat Superior* Principles

Further, Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*.[3]  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

Plaintiff seeks to hold Defendants Adams, Sellers, and Wilkes liable solely based on their supervisory positions as Wardens at two penal institutions. He fails to present any facts indicating there is a causal connection between any actions of Defendants Adams, Sellers, and Wilkes and the alleged violation of Plaintiff's constitutional rights. Rather, Plaintiff makes

---

[3] The principle that *respondeat superior* is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

8

conclusory allegations that Defendants Adams, Sellers, and Wilkes are generally in control of the daily operations of and are responsible for non-specific policies at their respective prisons, and therefore, are responsible for the alleged violations of Plaintiff's constitutional rights. Accordingly, the Court should **DISMISS** Plaintiff's claims against Defendants Adams, Sellers, and Wilkes.

In addition, Plaintiff seeks to hold Defendant Bryson, who was the Commissioner for the GDOC at the time giving rise to the events set forth in Plaintiff's Complaint, liable based solely on his position as former Commissioner. However, Plaintiff fails to set forth any specific factual allegations indicating a causal connection between Defendant Bryson's alleged actions and the alleged violations of Plaintiff's constitutional rights. Thus, the Court should **DISMISS** Plaintiff's claims against Defendant Bryson.

### C.  Failure to Respond to a Grievance

Finally, Plaintiff asserts in his Amended Complaint that Defendant Adams did not respond to a grievance he filed. Even presuming that the grievance Plaintiff filed concerned his requests for medical care and treatment, Plaintiff fails to state a claim against Defendant Adams on this basis. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Aiken v. Perry, No. 5:14-CV-97, 2016 WL 3676629, at *4 (S.D. Ga. July 6, 2016) (citing Rienholtz v. Campbell, 64 F. Supp. 2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table)); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no

entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) (finding that a federal inmate's constitutional rights are not compromised by a prison's refusal to entertain his grievances); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Burke v. Tenn. Dep't of Corr., No. 3:15-CV-00101, 2015 WL 1275191, at *2 (M.D. Tenn. Mar. 19, 2015) ("Although the Plaintiff may feel that his grievances were not taken seriously or handled properly, a Plaintiff cannot premise a § 1983 claim on allegations that the an [sic] institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place."); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).  Accordingly, to the extent Plaintiff wishes to state a valid constitutional violation against Defendant Adams based on his failure to respond to Plaintiff's grievance, Plaintiff fails to do so.  As a result, the Court should **DISMISS** Plaintiff's claims against Defendant Adams.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[4]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous

---

[4] A certificate of appealability is not required in this Section 1983 action.

claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motions for Leave to Proceed *in Forma Pauperis*.  I **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint for failure to state a claim and **DIRECT** the Clerk of Court to **CLOSE** this case.  Additionally, I **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 17th day of May, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA